UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **MELISSA ELLIOTT ET AL** | **CIVIL ACTION NO. 22-6236** |
| **VERSUS** | **JUDGE EDWARDS** |
| **SHRINERS HOSPITALS FOR CHILDREN** | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING AND ORDER

Before the Court is a Motion to Dismiss for Failure to State a Claim filed by Defendant, Shriners' Hospital for Children ("Shriners").[1] This employment discrimination lawsuit arises out of Shriners' termination of employees Holley Furrow ("Furrow") and Melissa Elliott ("Elliott") (collectively, "Plaintiffs"). Plaintiffs refused to become vaccinated after Shriners denied their religious accommodation requests to be exempt from Shriners' health and safety requirement to become vaccinated against COVID-19. For the following reasons, Shriners' Motion to Dismiss is **DENIED**.

## BACKGROUND

In early 2020, a global outbreak of the COVID-19 virus began to emerge; by March the outbreak was officially declared a pandemic by the World Health Organization.[2] To combat the spread of the virus, public health experts opined that the public should practice social distancing, wear marks, and isolate if showing

---

[1] R. Doc. 18.
[2] R. Doc. 16 at 3, ¶¶ 17-18.

symptoms of COVID-19.[3] On December 11, 2020, the U.S. Food and Drug Administration granted Emergency Use Authorization for the Pfizer-BioNTech vaccine.[4] Moderna and Johnson & Johnson vaccines also received Emergency Use Authorization soon thereafter.[5]

On September 14, 2021, Shriners announced that all employees were required to be fully vaccinated against COVID-19 (the "Vaccine Policy").[6] Plaintiffs worked in healthcare capacities for Shriners in Shreveport, Louisiana – Furrow as a physical therapist and Elliot as a motion analysis assistant.[7] Employees were required to receive their first shot by October 11, 2021, and be fully vaccinated by December 6, 2021.[8] The Vaccine Policy also stated that employees could apply for medical or religious exemptions.[9]

Following Shriners' Vaccine Policy announcement, Plaintiffs submitted religious exemption requests.[10] In her request, Furrow declared that she has had a personal relationship with Jesus Christ since the age of seven and bases her life decisions on the Bible.[11] She quoted scripture in support of her stated belief that "God created [her] with the genetic material that He wants [her] to have…" and explained that her understanding of the mRNA vaccine was that it would "instruct [her] body

---

[3] R. Doc. 16 at 3, ¶ 20.
[4] R. Doc. 16 at 4, ¶ 21.
[5] R. Doc. 16 at 4, ¶ 21.
[6] R. Doc. 16 at 1, ¶ 2 and 4, ¶ 24; *see also*, R. Doc. 16-1 at 1-10.
[7] R. Doc. 16 at 2, ¶¶ 7-8.
[8] R. Doc. 16 at 4, ¶ 25.
[9] R. Doc. 16 at 4, ¶ 26.
[10] R. Doc. 16 at 5, ¶ 32; R. Doc. 16-1 at 12-15 (Furrow's religious exemption request form and statement); R. Doc. 16-1 at 19 (Elliot's religious exemption request statement).
[11] R. Doc. 16-1 at 15.

to produce a spike protein that is not natural to [her] own human genetic system."[12] She affirmed that because of the religious beliefs described she did not have God's peace in taking the vaccine.[13]

In her request, Elliot explained that she was seeking a religious exemption "in response to [her] U.S. Constitutional rights in addition to [her] religious beliefs." It reads, "[w]ith faith, I am exercising my religious freedom and trusting God for my health."[14] She stated that her "conscience hasn't allowed [her] to chance the potential harmful reaction" and that she has the "responsibility and requirement to protect [her] body because of [her] belief."[15] Elliot also cited to a Bible verse to support her stated beliefs.[16] She concluded by stating that she made her request "for the glory of God and consistent with [her] faith."[17]

On October 26, 2021, each Plaintiff received an email from Shriners' Human Resources Manager, Mehar Sikand ("Sikand"), stating that her religious exemption was denied.[18] Elliot resubmitted her request and provided additional information, citing Louisiana law and restating her religious objections to the COVID-19 vaccine.[19] Therein, Elliot states that she had "a personal conviction from the Holy Spirit not to receive [the vaccine]; that "[t]he Bible makes it clear that as a believer in Christ, [her] body is a temple of the Holy Spirit and [she] must honor God by carefully considering

---

[12] R. Doc. 1-1 at 15.
[13] R. Doc. 1-1 at 15.
[14] R. Doc. 16-1 at 19.
[15] R. Doc. 16-1 at 19.
[16] R. Doc. 16-1 at 19.
[17] R. Doc. 16-1 at 19.
[18] R. Doc. 16 at 6, ¶¶ 35, 37.
[19] R. Doc. 16 at 6, ¶ 36; R. Doc. 16-1 at 22.

what [she] injects into [her] body."[20] Elliot also stated that she would not need any special accommodations as she had been able to successfully complete her job duties thus far without being vaccinated.[21]

Elliot received another denial of her religious exemption request on November 11, 2021, from Shriners' Vice President for Human Resources, Kathy Dean ("Dean"), who explained that Shriners' determinations were based on a two-prong analysis. Shriners explained that first it analyzes "whether there is a valid medical exemption or sincerely held religious belief directly linked to the request for exemption" and second, "whether we were able to accommodate that exemption and if it was an undue hardship to accommodate [a] request."[22] In her email, Dean does not explicitly identify which part of the two-prong analysis Elliot failed to satisfy, but does elaborate that Shriners had "determined that an unvaccinated employee in certain positions pose a direct threat to our patient population due to the age and/or co-morbidities of our patients and our employees who serve these patients on a daily basis."[23]

Furrow alleges that on December 1, 2021, she appealed the denial of her original request but never received a response.[24] That same day, Elliot sent an email (presumably to human resources), reiterating that she was asserting her right to a

---

[20] R. Doc. 16-1 at 22.
[21] R. Doc. 16-1 at 22.
[22] R. Doc. 16-1 at 24.
[23] R. Doc. 16-1 at 24.
[24] R. Doc. 16 at 6, ¶ 37.

religious exemption in accordance with state and federal laws and notifying Shriners that "should [it] continue to violate that right, legal action [would] be forthcoming."[25]

Plaintiffs allege that their exemption requests were denied with "no real explanation."[26] However, Shriners claims that after reviewing Plaintiffs' accommodation requests it could not determine if the requests were based on sincerely held religious beliefs, practices, or observances.[27] Even so, Shriners maintains that it did not deny the requests on that basis; rather, Shriners purports that it denied the requests for accommodation because granting them would have imposed an undue hardship on Shriners, its providers, and its staff.[28]

On December 2, 2021, Plaintiffs' employment with Shriners was terminated and they, along with approximately eight (8) others, were escorted out of the hospital by security.[29] Plaintiffs allege that similarly situated employees were granted exemptions, were not required to get vaccinated, and remained employed with Shriners.[30] Plaintiffs claim that they have sustained damages including lost income, lost bonuses, lost insurance, lost company benefits, and emotional distress, as a result of Shriners' actions.[31]

Plaintiffs filed the present lawsuit on December 26, 2022.[32] Shriners filed its first Motion to Dismiss for Failure to State Claim on May 5, 2023.[33] Plaintiffs

---

[25] R. Doc. 16-1 at 23.
[26] R. Doc. 16 at 6, ¶¶ 35-37.
[27] R. Doc. 18-1 at 8.
[28] R. Doc. 18-1 at 8.
[29] R. Doc. 16 at 7, ¶ 39.
[30] R. Doc. 16 at 7, ¶ 41.
[31] R. Doc. 16 at 7, ¶ 44.
[32] R. Doc. 1.
[33] R. Doc. 7.

subsequently requested and were granted leave to amend the Complaint.[34] Plaintiffs filed their First Amended Complaint ("Amended Complaint") on July 11, 2023.[35] The Amended Complaint sets forth two claims of religious discrimination, failure to accommodate and disparate treatment, in violation of Title VII.[36]

Presently before the Court is Shriners' second Motion to Dismiss, wherein Shriners alleges that Plaintiffs' claims must be dismissed because (1) Plaintiffs fail to state a claim under Title VII for failure to accommodate; (2) Plaintiffs' accommodation claim fails because allowing the accommodation would have resulted in undue hardship; and (3) Plaintiffs fail to plead disparate treatment claims.[37]

## LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face."[38] As the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.[39]

---

[34] R. Doc. 14; R. Doc. 15.
[35] R. Doc. 16.
[36] R. Doc. 16.
[37] R. Doc. 18-1.
[38] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007)).
[39] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

This plausibility standard calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim; however, mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" do not suffice.[40]

In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[41] A court may rely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[42] "A court should not dismiss a complaint with properly pled factual allegations, even if it strikes [the court] that actual proof of those alleged facts is improbable."[43]

## ANALYSIS

**1. Failure to Accommodate**

Under Title VII of the Civil Rights Act, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[44] "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on

---

[40] *Iqbal*, 556 U.S. at 555-56.
[41] *In re Katrina*, 495 F.3d at 205 (internal quotation marks omitted).
[42] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)).
[43] *Bazinet v. Beth Israel Lahey Healthy, Inc.*, 113 F.4th 9, 15 (5th Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (cleaned up).
[44] 42 U.S.C. § 2000e-2(a)(1).

the conduct of the employer's business."[45]

The court uses a burden-shifting framework to analyze a claim for failure to accommodate a religious observance.[46] The failure to accommodate claim is established by four elements "(1) a bona fide religious belief, (2) that conflicted with a requirement of employment, (3) that the employer was informed of the belief, and (4) that the employee suffered an adverse employment action for failing to comply with the conflicting employment requirement."[47] If she establishes a prima facie case, the burden shifts to the employer "[t]o demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship."[48] However, at the motion to dismiss stage, an employee is not required to "submit evidence to establish a prima facie case of discrimination," but must "plead sufficient facts on all of the ultimate elements of a [discrimination] claim to make [their] case plausible."[49]

First, Shriners contends that "[t]here is no explanation as to what bona fide religious belief the vaccines violated – only the vague statement that they "cannot accept into their bodies various kinds of products."[50] Next, Shriners alleges that the Amended Complaint "fails to satisfy the second prong of their prima facie claim of religious discrimination under Title VII, as Plaintiffs do not adequately plead that their religious beliefs conflicted with the Vaccine Policy."[51] Finally, Shriners contends

---

[45] 42 U.S.C. § 2000e(j).
[46] *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014).
[47] *Id.* (citation omitted).
[48] *Id.* (quoting *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013)).
[49] *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted).
[50] R. Doc. 18-1 at 11.
[51] R. Doc. 18-1 at 15.

that Plaintiffs' claims still fail because "they failed to plead that Shriners was informed of their beliefs." For the following reasons, the Court is satisfied that Plaintiffs' Amended Complaint and attached exhibits satisfy the 12(b)(6) pleading standard for a Title VII religious discrimination claim for failure to accommodate as set forth by numerous circuit courts that have considered similar religious accommodation requests from the COVID-19 vaccination.[52]

Both the United States Supreme Court and the Fifth Circuit have cautioned that "judicial inquiry into the sincerity of a person's religious belief 'must be handled with a light touch, or judicial shyness.'"[53] "Bona fide religious beliefs include 'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.'"[54] A court's task is to decide "whether [the individual's beliefs] are, in his own scheme of things, religious."[55]

> Title VII's broad definition of religion tells us most everything we need to know about the scope of the "religious in nature" inquiry. The employee must allege facts plausibly permitting an inference that some "aspect[ ]" of the accommodation request is based on the employee's "religious observance and practice" or "belief." 42 U.S.C. § 2000e(j). Put another way, the controlling inquiry at the pleading stage is whether

---

[52] *See Thornton v. Ipsen Biopharmaceuticals, Inc.*, 126 F.4th 76 (1st Cir. 2025); *Barnett v. Inova Health Care Servs.*, No. 24-1271, 125 F.4th 465, 471-72 (4th Cir. Jan. 7, 2025); *Lucky v. Landmark Med. of Michigan*, 103 F.4th 1241 (6th Cir. 2024); *Bube v. Aspirus Hospital, Inc.*, 108 4th 1017 (7th Cir. 2024); *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024).
[53] *Davis*, 765 F.3d at 486 (citation omitted) (stating that "the sincerity of a plaintiff's engagement in a particular religious practice is rarely challenged,' and 'claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions'")); s*ee, e.g.*, *Burwell v. Hobby Lobby Stores*, Inc., 573 U.S. 682, 724, 134 S.Ct. 2751, 189 L.Ed.2d 675 (2014) (emphasizing that "federal courts have no business addressing [ ] whether the religious belief asserted in a [Religious Freedom Restoration Act] case is reasonable"); *United States v. Ballard*, 322 U.S. 78, 86, 64 S.Ct. 882, 88 L.Ed. 1148 (1944) (emphasizing that "[r]eligious experiences which are as real as life to some may be incomprehensible to others").
[54] *Davis*, 765 F.3d at 486 (citing 29 C.F.R. § 1605.1; *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965)).
[55] *Seeger*, 380 U.S. at 185; *id.* at 176 ("a belief is 'religious'" if it is '[a] sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by … God").

>the employee plausibly based her vaccination exemption request at least in part on an aspect of her religious belief or practice.[56]

However, a plaintiff's allegedly sincere religious beliefs are not unchallengeable.[57] Here, Shriners asserts that Plaintiffs' vaguely stated beliefs resemble "a blanket privilege … for avoiding all unwanted obligations" which warrants dismissal.[58] Shriners maintains that Plaintiffs' allegations demonstrate that their opposition to receiving the vaccine is "political, sociological, or philosophical – not religious."[59]

The United States Supreme Court has explained that although the determination of whether a belief is "religious" is a delicate question, "the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests."[60] Beliefs based on "purely secular considerations" or that are "merely a matter of personal preference" are not protected by Title VII.[61] Nevertheless, "an accommodation request [that] invokes or … even turns upon secular consideration does not negate its religious nature."[62] "To conclude otherwise fails to give effect to Congress's expansive

---

[56] *Bube*, 108 F.4th at 1019.
[57] *See e.g.*, *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (dismissing Title VII claims on a motion to dismiss because plaintiff's alleged belief was an "isolated moral teaching" rather than a "comprehensive system of beliefs about fundamental or ultimate matters" and stating that requiring an employer to unfailingly respect a plaintiff's belief that they have the "God given right to make [their] own choices … would amount to a blanket privilege and a limitless excuse for avoiding all unwanted obligations"); *Troulliet v. Gray Media Group, Inc.*, 2023 WL 2894707 at *5 (E.D. La. 4/11/23) (finding the plaintiff "failed to allege with any particularity that she had a bona fide religious belief" because "[a]t most, she allege[d] that she desired a religious exemption from [the defendant's] vaccine requirement").
[58] R. Doc. 18-1 at 11.
[59] R. Doc. 18-1 at 12.
[60] *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972).
[61] *Yoder*, 406 U.S. at 215–16.
[62] *Passarella v. Aspirus, Inc.*, 108 F.4th 1005, 1010 (7th Cir. 2024).

definition of 'religion' and, even more, denies that a matter of personal conviction can root itself in both religious and non-religious reasons."[63] "[T]he controlling inquiry at the pleading stage [is] whether the employee plausibly based her vaccination exemption request at least in part on an aspect of her religious belief or practice."[64]

Furrow's religious exemption request indicates that she holds "sincere and genuine beliefs that forbid [her] from accepting a COVID-19 vaccination."[65] Furrow also stated that she "[has] had a personal relationship with Jesus Christ since the age of seven, and [she] base[s her] life decisions on the Bible."[66] She declared that she "seek[s] God's will in most everything that [she does], including whether or not [she] should receive the COVID-19 vaccine."[67] Furrow cited to a Bible verse that she interprets to mean that "God created [her] with the genetic material that He wants [her] to have."[68] Furrow also stated that because the COVID-19 vaccines use mRNA technology they do not operate like "traditional vaccines" but instead "are genetic coding instructions that purpose to instruct [one's] body to produce a spike protein that is not natural to [the] human genetic system." She went on to state that there is some disagreement within the scientific community over whether the COVID-19 vaccine alters a human's genetic structure and whether it spreads to the rest of the body or remains localized.[69] Furrow concluded that for all the reasons she listed, she

---

[63] *Passarella*, 108 F.4th at 1010.
[64] Passarella, 108 F.4th at 1009.
[65] R. Doc. 16-1 at 15.
[66] R. Doc. 16-1 at 15.
[67] R. Doc. 16-1 at 15.
[68] R. Doc. 16-1 at 15.
[69] R. Doc. 16-1 at 15.

did not have God's peace in receiving the vaccine.[70]

Elliot also cited to a Bible verse to support her belief that she trusts God for her health and that she has "the responsibility and requirement to protect [her] body because of this belief.[71] Elliott's religious accommodation request also indicates that her "conscience hasn't allowed [her] to chance the potential harmful reaction."[72] She concluded by stating that she made her request "for the glory of God and consistent with [her] faith."[73] In the supplemental letter she submitted to appeal the denial of her first request, Elliot states that she has "a personal conviction from the Holy Spirit not the receive [the vaccine]."[74] She also stated that as a believer in Christ, her "body is a temple of the Holy Spirit and [she] must honor God by carefully considering what [she] inject[s] into [her] body."[75]

Bearing in mind the binding precedent warning that the inquiry into the sincerity of religious beliefs should be handled with judicial shyness, the Court disagrees with Shriners' assertion that Plaintiffs have not sufficiently alleged bona fide religious beliefs. Both exemption requests are based on their face, and at least in part, on a dimension of the Plaintiffs' religious beliefs. This makes them – at least at the pleading stage – religious in nature within the meaning of Title VII. Moreover, Plaintiffs have sufficiently alleged that their beliefs conflicted with the Vaccine Policy. Furrow explained that the mRNA technology used to develop the COVID-19

---

[70] R. Doc. 16-1 at 15.
[71] R. Doc. 16-1 at 19 (quoting Jeremiah 17:14).
[72] R. Doc. 16-1 at 19.
[73] R. Doc. 16-1 at 19.
[74] R. Doc. 16-1 at 22.
[75] R. Doc. 16-1 at 22.

vaccines uses a fragment of dead virus to induce an immune response and that the vaccine's genetic coding instructions instructs the body to produce a spike protein that is not natural to the genetic system God created for her and conflicts with her belief that she is "fearfully and wonderfully made."[76] Similarly, Elliot cited to scripture regarding faith and healing and explained that she has a personal conviction from the Holy Spirit against taking the COVID-19 vaccine.[77]

Shriners' assertion that Plaintiffs fail to plead that Shriners was informed of their beliefs is unconvincing. Plaintiffs have alleged that they each submitted religious exemption requests to the Shriners and that Shriners was made aware of their religious beliefs and conflicts with receiving the vaccine. Shriners does not dispute that it received Plaintiffs' religious accommodation requests; rather, Shriners purports that because Plaintiffs did not explicitly allege what their conflicting religious beliefs were, they cannot allege that Shriners was aware of such beliefs.[78] Having already found that Plaintiffs' religious exemption requests plausibly allege that Plaintiffs' sincerely held religious beliefs conflicted with Shriners' Vaccine Policy and being that there is no dispute to the fact that the exemptions were submitted to Shriners, the Court finds that Plaintiffs have plausibly plead that Shriners was informed of their religious beliefs prior to their termination.

**2. Undue Hardship**

---

[76] R. Doc. 16-1 at 15.
[77] R. Doc. 16-1 at 19.
[78] R. Doc. 18-1 at 16.

Having alleged "more than a sheer possibility" that their sincere religious beliefs were a factor in the adverse employment decision — i.e., their refusal to participate in COVID-19 vaccination on the basis of sincerely held religious beliefs was the cause for their termination – the burden now shifts to Shriners. Shriners alleges that "[e]ven if Plaintiffs could establish a prima facie case of religious discrimination, their claim still fails as allowing the accommodation would have resulted in an undue hardship for Shriners, a hospital devoted to providing high-quality specialty medical care to children who are compromised by orthopedic conditions."[79] However, the Fifth Circuit has explained that "[a] court ... inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss" and that such inquiries are better suited for summary judgment or trial.[80] "Dismissal under Rule 12(b)(6) on undue hardship grounds is appropriate only "if the facts establishing the defense are clear on the face of the plaintiffs' pleadings and there is no doubt that the plaintiffs' claims are barred."[81] Shriners has not cited to specific facts that leave no doubt that an accommodation for Plaintiffs would cause Shriners undue hardship. Rather, this case

---

[79] R. Doc. 18-1 at 19 (incorrectly identifying the pleading standard on a motion to dismiss as requiring prima facie evidence rather than plausibility).
[80] *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019); *see, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (explaining that the *Twombly* pleading standard "[does] not require[ ] heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face").
[81] *Bazinet v. Beth Israel Lahey Healthy, Inc.*, 113 F.4th 9, 18 (5th Cir. 2024) (citation omitted).

falls into the more usual category where conducting the undue-hardship evaluation requires further factual development.[82]

Plaintiffs' factual allegations, accepted as true, indicate that their beliefs are rooted in some aspect of their religion and that these beliefs conflicted with a requirement of employment. At this nascent stage of litigation, they need not provide any more factual specificity because they have plausibly stated a claim for relief for failure to accommodate under Title VII's religious discrimination provisions.

### 3. Disparate Treatment

Shriners contends that Plaintiffs' disparate treatment claims should be dismissed because Plaintiffs do not allege that they are members of a protected class or that Shriners treated similarly situated employees outside of their protected class more favorably.[83] Plaintiffs submit that they have sufficiently alleged that they have specific religious beliefs and that other employees' medical and/or religious exemption requests were granted, while Plaintiffs' were denied.[84] Plaintiffs aver that information as to how many other employees were given exemptions will become known during discovery.[85]

At the motion to dismiss stage, an employee is not required to "submit evidence to establish a prima facie case of discrimination," however, she must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [her] case

---

[82] *Bazinet*, 113 F.4th at 18-19 (explaining that it is usually not possible to adjudicate the undue hardship defense at the pleading stage because the *Groff* test is "fact-specific") (citing *Groff v. DeJoy*, 600 U.S. 447, 468, 143 S.Ct. 2279, 2279, 216 L.Ed.2d 1041 (2023)).
[83] R. Doc. 18-1 at 26.
[84] R. Doc. 20 at 8.
[85] R. Doc. 20 at 8.

plausible.[86] There are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an "adverse employment action," (2) taken against a plaintiff "because of her protected status."[87] A plaintiff must allege facts, direct or circumstantial, that would suggest the employer's actions were based on her protected status or that the employer treated similarly situated employees outside of her protected class more favorably.[88]

In the Amended Complaint, Plaintiffs allege that "other employees who were similarly situated to Plaintiffs were given religious or medical exemptions and did not have to get vaccinated and were not terminated." At this stage, we must grant all reasonable inferences in Plaintiffs' favor. Plaintiffs' allegation supports a reasonable inference of discriminatory intent because Plaintiffs aver that other unvaccinated employees who do not share their religious beliefs were granted religious and/or medical exemptions and were not terminated for their refusal to receive the vaccine – i.e. similarly situated employees outside of their protected class were treated more favorably.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs have sufficiently plead the ultimate elements of Title VII religious discrimination claims for failure-to-accommodate and disparate treatment. Accordingly, Shriners' second Motion to Dismiss for Failure to State Claim (R. Doc. 18) is **DENIED.**

---

[86] *Chhim*, 836 F.3d at 470 (citations omitted).
[87] *Raj v. La. State University*, 714 F.3d 322, 331 (5th Cir. 2013) (quoting *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 57 6 (5th Cir. 2004)).
[88] *See Raj*, 714 F.3d at 331.

**THUS DONE AND SIGNED** this 11th day of March, 2025.

_____
**JERRY EDWARDS, JR.
UNITED STATES DISTRICT JUDGE**